*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-256

JUNE TERM, 2015

| | | |
|---|---|---|
| Robert Magee | } | APPEALED FROM: |
| | } | |
| | } | Employment Security Board |
| v. | } | |
| | } | |
| Department of Labor | } | |
| (Chittenden East Supervisory Union, | } | DOCKET NO. 02-14-114-06 |
| Employer) | } | |

In the above-entitled cause, the Clerk will enter:

Claimant appeals from the denial of his request for unemployment compensation benefits. He argues that the Employment Security Board violated his due process rights by modifying a decision by an administrative law judge (ALJ) and determining that he voluntarily quit his position instead of being discharged for gross misconduct. He also asserts that there was insufficient evidence to support a conclusion that he stole from his employer. We affirm.

Claimant requested unemployment compensation benefits in January 2014. He indicated that he had resigned from his position. Employer apparently indicated that claimant was fired on a "Request for Separation and Payment Information" form. A claims adjudicator determined that claimant had been discharged from his employment for painting school buses without permission. His last day of work was December 13, 2013. The claims adjudicator stated that employer had not responded to additional requests for information. Thus, based on the available information, the claims adjudicator found that claimant was discharged, but not for misconduct connected with work because employer had failed to substantiate such misconduct.

Employer appealed this decision to an ALJ. Employer asserted that claimant had been discharged for unacceptable and improper conduct. In written materials submitted to the ALJ, claimant asserted that employer told him that if he did not resign, he would be terminated at an upcoming board meeting. Claimant expressed confusion that the Department of Labor had indicated that he was discharged, because he thought he had resigned. He pointed to his letter of resignation, which was initialed by employer. There was also a letter submitted in which employer formally accepted claimant's letter of resignation. Claimant indicated that he honestly did not know if he had been terminated or not. Claimant also addressed the gross misconduct issue.

The matter was heard by an ALJ on March 11 and March 24, 2014. The first notice of hearing, dated February 28, 2014, indicated that the issues to be considered were "discharge from employment" and "discharge-gross misconduct." The notice of continued hearing, dated March 14, indicated that these issues were to be considered as well as "voluntary separation from employment."

At the first hearing, the superintendent for employer testified that claimant had resigned. At that point, claimant's letter of resignation and employer's acceptance of that resignation had already been introduced as exhibits without objection. The ALJ stopped the hearing, indicating that she had not included the "voluntary separation" issue on the hearing notice. Employer waived notice of this issue, but claimant did not, although he stated that he had resigned but under duress. The ALJ indicated that the hearing would be rescheduled following proper notice. Employer then stated that if claimant had not resigned, he would have been terminated. The ALJ responded that this made a difference for purposes of the hearing because if claimant had no choice, then for unemployment purposes, it would be considered a discharge from employment. Employer clarified that he had moved for termination, but that termination was not guaranteed, apparently because it was a decision that a board would need to make. Given this, the ALJ decided that she would need to hold a continued hearing on the question of whether claimant voluntarily quit. The first hearing then concluded.

The continued hearing was held on March 24, and, as indicated, it was continued to allow notice that the issue of voluntary separation would be considered. Claimant's attorney was present during this hearing. Employer again testified that claimant resigned and that employer had accepted the resignation. If claimant had not resigned, employer stated that it would have recommended that he be terminated. Employer testified that termination would have been recommended because claimant had kept a bus owned by employer on his personal property for approximately eight years even though he had been asked to return it and claimant had entered into a contract with another company to do warranty work, which was not allowed by his contract with employer and constituted "double-dipping," and claimant previously had been told to stop such work. Employer testified that claimant had engaged in a pattern of this type of behavior. Claimant provided his version of events as well. As to the termination issue, claimant testified that he was basically told that if he did not resign, he would be terminated.

The ALJ issued a written decision in April 2014, finding as follows. Claimant was employed for nineteen years as the transportation supervisor for employer. He was paid $73,000 per year and his last actual day of work was December 13, 2013. Claimant was hired as an independent contractor by W.C. Cressey to do warranty body-work and paint buses. The buses were owned by employer, which paid W.C. Cressey for the work. Claimant billed W.C. Cressey for his time and materials and was paid for both. W.C. Cressey would then bill employer for the work that claimant performed. Claimant submitted purchase orders to employer for paint for the buses. The purchase orders were paid by employer. Claimant would then take the paint home to his shop and do the warranty body-work on the buses for W.C. Cressey.

2

The ALJ explained that under 21 V.S.A. § 1344(a)(2)(B), an individual was disqualified for benefits if he or she had been "discharged by his or her last employing unit for gross misconduct connected with his or her work." "Gross misconduct" is defined as "conduct directly related to the employee's work performance that demonstrates a flagrant, wanton, and intentional disregard of the employer's business interest, and that has direct and significant impact upon the employer's business interest, including theft, fraud, [and other specified matters]." Id. The ALJ concluded that claimant had been discharged for gross misconduct connected with his work. It found that employer purchased the paint and then claimant took the paint and used it to perform work for his sideline business, and then charged for the paint. By doing this, claimant was basically stealing the paint for his personal gain. As this was one of the reasons for the discharge, the discharge was for theft and theft was clearly gross misconduct. Accordingly, claimant was disqualified for benefits.

Claimant appealed to the Board. Following a hearing, the Board found sufficient evidence to support the findings of fact made by the ALJ, and the Board agreed with and adopted those facts as its own. It made the following additional findings. On December 10, 2013, the superintendent of the Chittenden East Supervisory Union sent claimant a letter confirming that claimant had been placed on administrative leave. The letter explained that the superintendent had investigated claimant's practices of performing warranty work on buses for the Supervisory Union's bus vendor without authorization, purchasing paint without reimbursing the Supervisory Union, and storing a bus on his property for eight years without permission. The superintendent concluded the letter by informing claimant that he was going to recommend claimant's termination at the Executive Committee Meeting scheduled for December 16, 2013. Claimant was informed that he had the right to attend the meeting and respond to the allegations against him. On December 14, 2013, prior to the meeting of the Executive Committee, claimant submitted a written letter of resignation to the superintendent.

Based on these findings, the Board concluded that claimant was disqualified for benefits because he had left the employ of his last employing unit voluntarily without good cause attributable to such employing unit. See 21 V.S.A. § 1344(a)(2)(A). It explained that claimant had the burden of demonstrating that he had good cause attributable to employer for choosing unemployment over continued employment, and claimant failed to meet this burden. The Board noted that the ALJ had concluded that claimant was discharged, but she made no findings concerning the interactions between claimant and the superintendent immediately preceding claimant's separation from employment. In the Board's view, the evidence showed only that the superintendent was going to recommend claimant's dismissal to the Executive Committee, and that claimant would have the opportunity to attend the meeting and respond to the superintendent's allegations. By choosing not to avail himself of that opportunity, claimant must be considered to have voluntarily resigned. While he might have considered the Executive Committee's decision to be a foregone conclusion, the record did not support that assumption. The Board concluded that a resignation given in anticipation of some future action that is not a certainty cannot be said to be for good cause. The Board thus modified the ALJ's decision. This appeal followed.

3

Claimant acknowledges that the Board may modify an ALJ's decision, see 21 V.S.A. § 1349, but argues that the Board violated fundamental principles of fairness when it modified the ALJ's decision here. He argues that this case is like Kaufman v. Dep't of Emp't Sec., 136 Vt. 72 (1978) (per curiam), and, as in that case, we should reverse and remand for further proceedings. Claimant also contends that there was insufficient evidence to support the conclusion that he stole from employer.

We find these arguments unpersuasive. In Kaufman, the appellant filed a claim for benefits, and after a hearing, a claims examiner found that she had been discharged for misconduct and was therefore disqualified from benefits. The appellant appealed to a referee, who gave notice of a hearing concerning "Discharge from Employment." Following a hearing, the appeals referee sustained the decision of the claims examiner. The appellant then appealed to the Employment Security Board. She asked the Board to find that her actions did not amount to misconduct. The Board, after notice, held a hearing and made findings of fact. From its findings, the Board concluded that the appellant had not been discharged for misconduct but rather she left her last employing unit voluntarily without good cause attributable to such employing unit. The Board thus modified the referee's decision and disqualified the appellant from benefits. The period of disqualification on the grounds identified by the Board was "substantially harsher" than the disqualification for discharge based on misconduct. Id. at 74.

The appellant argued that the Board's decision changing the characterization of her termination from discharge for misconduct to voluntary quit was a deprivation of due process. We recognized that the Board had the power to affirm, modify, or reverse the decision of the referee, but concluded that "[i]n the exercise of this function, . . . it cannot violate fundamental principles of fairness." Id. We explained that "[a] fair hearing requires either proper notice of the issues to be heard or a basis in the record to show an informed and intelligent waiver of the same." Id. We stated that "[t]he hearing before the Board could encompass only the issues framed by the pleadings," and in this case, "[t]he correctness of the claims examiner's and appeals referee's findings that [the] appellant had been discharged for misconduct was the only issue submitted to the Board for its determination." Id. "When the board departed from this issue and concluded that [the] appellant's employment was terminated by voluntary quit without giving notice to the appellant that such a conclusion was being considered," we continued, "it deprived [the] appellant of the opportunity to make a countervailing argument. This was a denial of a fair hearing." Id. We thus vacated the Board's decision and remanded for further proceedings.

While Kaufman at first may appear similar to the situation here, in fact, the record shows that claimant was provided notice that the issue of voluntary separation would be considered at the hearing before the ALJ, the level at which evidence is presented. Indeed, the hearing was continued precisely to allow claimant the opportunity to prepare his response and present any evidence on this issue. At the second hearing, as at the first, employer testified that claimant resigned. Claimant too stated that he resigned, albeit "under duress." Claimant's letter of resignation was submitted as evidence, as was employer's acceptance of claimant's resignation. Claimant had adequate notice that this issue would be considered and ample opportunity to

respond to this issue. The Board relied solely on the evidence presented to the ALJ in reaching its decision, as it must. See LeBarron v. Dep't of Emp't and Training, 150 Vt. 193, 195 (1988) (recognizing that "decisions by the Board are to be based on the record of the hearing before the referee"). It did not err in reaching a different legal conclusion than the ALJ based on the evidence. It did not deprive claimant of his due process rights in doing so.

Because we conclude that the Board did not err in concluding that claimant voluntarily left his employment without good cause attributable to his employer, we need not consider claimant's assertion concerning discharge for gross misconduct.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice